## Robinson & Kennedy *v.* Elizabeth J. Baird, Appellant.

*Building contract—Sub-contractor—Architect—Agent—Set-off.*

Where a building contract provides that parts of the work shall be done with a particular kind of plaster, and the sub-contractor, with the consent of the architect, who is the owner's agent, substitutes an inferior plaster, the owner cannot claim, as a set-off to the contract price, damages sustained by the substitution of the inferior plaster.

In such a case, where the architect's certificate states that the contractor is "entitled to a payment, being the last payment on contract price," "less credit for defective plastering," the contractor may sue to recover the amount due him, although no particular sum is stated in the architect's certificate.

Argued Oct. 30, 1894. Appeal, No. 161, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1893, No. 410, on verdict for plaintiff. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover balance alleged to be due on building contract. Before WHITE, J.

Plaintiff claimed to recover the sum of $1,946.95, with inter-. est, the final payment upon a written contract for the erection of a dwelling house for defendant, in the Nineteenth ward of the city of Pittsburg, under a written contract. The contract provided that the contractors should furnish the materials and labor and should well and sufficiently perform and finish, under the direction and to the satisfaction of the architect act-

ing as the agent of said owner, all the work included in said dwelling house, in accordance with the drawings and specifications. The contract also provided in clause 3, that "should alterations be required in the work shown or described by the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architect, and the sum herein agreed to be paid for the work according to the original specifications shall be increased or diminished, as the case may be." Clause 13 of the contract provided that " the final payment shall be made within     days after this contract is completely finished; provided that in each of said cases (referring to the several payments) the architect shall certify in writing that all the work upon the paper, and of which the payment is to become due, has been done to his satisfaction."

Plaintiffs claimed to recover the final payment upon the following certificate, signed by the architect, May 3, 1893 :

" This is to certify that Messrs. Robinson & Kennedy are entitled to a payment of      dollars, being the last payment on contract price on your residence on Stanton avenue, Nineteenth ward, city.

" Remark: The amount of this payment is same as written in article of agreement, less credits, and credit for defect in plastering."

On April 20, 1893, plaintiffs had presented their bill showing the items of the payment claimed. The architect checked off all except a few items not now in dispute and wrote : " The items as checked off in the above bill are O. K."

The specifications provided for adamant plaster. At the suggestion of the plasterer, the architect, without the knowledge or consent of the owner or contractor, substituted the Fitzgerald plaster in place of the adamant. One of the plaintiffs knew of the change when the work was partly done.

Defendant claimed to set off damages on account of inferior plastering.

The court charged in part as follows :

" [I think there is no doubt that this plastering was defective because of the materials used, and while that plaster has been used pretty largely in the city here, and appears to be satisfactory in many places, yet there is some evidence that it was not

always of a good quality, and that may be inferred even in this very house, because some rooms were good and some very bad, indicating that the material was not of uniform quality.   Now, are the plaintiffs responsible, for that is the question here? Their contract required them to use adamant plaster.   The architect, without their knowledge or consent, changed that, and told the plasterer to use the Fitzgerald plaster.   He admits himself that he did not do this after consulting plaintiffs or with their knowledge or consent; he took the responsibility of it, he said, because the plasterer suggested to him that it would be a better material; he examined a number of buildings in the city before he agreed to it, he said, and appeared satisfied that that would be better than the adamant plaster. Now, if the defect was in the material, in the quality of the plaster used, and the plaintiffs were not consulted about it, had nothing to do with it, they are not responsible.   If the change had been made with their consent and approbation, perhaps they might be responsible.   Their contract was to put on adamant plaster,. and I believe the only witness who testified in reference to adamant said that he never knew it to ‘ pop ; ’ but, at all events, that was their contract, and if the adamant had been put on and the materials defective then they might have been responsible, but when a different plaster entirely is used, without their knowledge and consent, they are not responsible for the quality of the materials.   If the manufacturers put on the market a defective article and sell it for a good and perfect article, perhaps they would be responsible, but · I say to you, and instruct you that if the defect in the plaster was because of the defect in the materials, the plaintiffs are not responsible for the defects in the plaster, or for any losses that the defendant may sustain in consequence of that.] ” [3]

Defendant’s points were among others as follows :  ·

1. Request for binding instruction.   Refused. [1]

“ 3.  That in any event the jury must allow to the defendant, as a credit upon the account claimed by plaintiff, such an amount as under the evidence will be sufficient to compensate the defendant for any deficiencies either in workmanship or materials in the performance of the contract by plaintiff.   *Answer :* This point is too broad, as it includes defects in the materials of the plastering, which, under the charge, the plaintiff was not responsible for.   It is therefore refused.” [2]

Verdict and judgment for plaintiff.    Defendant appealed.

*Errors assigned* were (1–3) instructions, quoting them.

*C. C. Dickey, Geo. Shiras, 3d,* and *W. K. Shiras* with him, for appellant, cited: Brown v. Decker, 142 Pa. 640; Conno v. Simpson, 104 Pa. 440; Reynolds v. Caldwell, 51 Pa. 298; Howard v. R. R., 69 Pa. 489; Hartupee v. Pittsburg, 97 Pa. 107; Clark v. Watson, 18 C. B., N. S. 278; Sweeney v. United States, 109 U. S. 618; Smith v. Brady, 17 N. Y. 189; Singerly v. Thayer, 108 Pa. 291; Irwin v. Schultz, 46 Pa. 76; O'Reilly v. Kerns, 52 Pa. 214; Carr v. Wallace, 7 Watts, 394; Woods v. Wilson, 37 Pa. 379; Decker v. Eisenhauer, 1 P. & W. 476; Logan v. Gardner, 136 Pa. 588.

*R. A. Balph, James Balph* with him, for appellee, cited: O'Reilly v. Kerns, 52 Pa. 214.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 7, 1895:

The plaintiffs are building contractors who erected a dwelling house for the defendant in the city of Pittsburg under a written agreement. This action is brought upon that agreement to recover an apparent balance due thereon. The defence set up is that part of the work, particularly the plastering, was not done as the contract required and that the defendant has sustained damages that should be applied to reduce or extinguish the apparent balance sued for. The contract provided that the plastering should be done with a material known as adamant. The plaintiffs sublet this part of the work, but they bound their sub-contractor to use the same material that they were bound to use. After the subletting, and without the knowledge of the plaintiffs, the architect and the sub-contractor substituted another sort of material known as the " Fitzgerald plaster " in place of the adamant, and the plastering was actually done with the Fitzgerald plaster. The result showed that it had been improperly prepared by mixing the dry plaster with lime not sufficiently slacked, so that the process of slacking continued to go on after the plaster was spread upon the walls and the walls properly smoothed or surfaced. This caused the walls to be spotted and the surface irregular by the appearance of

blisters or openings caused by the slacking of particles of lime. It is not denied that some damages were sustained by the defendant in consequence of the substitution of the " Fitzgerald " in place of the " adamant " material, but the contention of the plaintiffs is that this damage cannot be charged to them, since the substitution was made, without their knowledge, by the architect, as the agent of the owner, and the sub-contractor.

The learned trial judge instructed the jury, if they found the fact to be as alleged by the plaintiffs their legal position was well taken, and the damages so sustained were not chargeable against the apparent balance due them. The second and third assignments of error relate to this ruling. If the fact was, as the defendant evidently supposed it to be when this line of defence was entered upon, that the material with which the plastering was done was changed under the direction or with the consent of the plaintiffs, then their liability for all the injury sustained by reason of such departure from the terms of the contract would be clear, and the amount when ascertained could be set off against any balance appearing to be due under the contract. But if, on the other hand, the change of material was due to the defendant's own act or to the act of her agent, the architect, without the knowledge of the plaintiffs, the results of such change would be chargeable to the interference of herself or her agent between the contractor and the sub-contractor, for which the contractor could not be held responsible. The learned judge was right therefore in submitting this question of fact to the jury and in his direction in regard to the effect of their finding upon it.

The only other assignment of error is the first, which complains that the court did not give a binding instruction to the jury to find in favor of the defendant. This direction was probably asked upon the theory that the action was prematurely brought because no particular sum was stated in.the certificate of the architect to be due to the plaintiffs. The certificate refers to the contract in which the amounts of the several payments are distinctly stated and sets out the fact that the contractors are " entitled to a payment, being the last payment on contract price for your residence." As though desirous to make the amount still more certain the architect appends to his certificate a " remark " stating that the payment now due as the last pay

ment " is the same as written in article of agreement, less credits, and credit for defective plastering." The only subject or item left uncertain was that of " defective plastering " which, in the light of the testimony, meant the substitution of the Fitzgerald for the adamant plaster. The architect knew, as his testimony shows, that this was done by himself and the sub-contractor without the knowledge of the plaintiffs, and it is fair to him to assume that he left that item for adjustment between the parties because of his knowledge of the facts. The jury have found from the testimony that the plaintiffs ought not to suffer for the acts of the defendant or her agent, and in the light of this finding the certificate is sufficiently explicit in its statement of the sum due upon the contract.

The judgment is affirmed.